289 So.2d 12 (1974)
610 LINCOLN ROAD, INC., d/b/a A. Taylor & Sons, a Florida corporation, Appellant,
v.
Milton KELNER, P.A., a Professional Association, Appellee.
No. 72-1511.
District Court of Appeal of Florida, Third District.
January 29, 1974.
Rehearing Denied May 15, 1974.
*13 Norman F. Solomon, Miami, for appellant.
Milton Kelner, Miami, for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
PER CURIAM.
Appellant, defendant in the trial court, seeks review of an adverse final judgment in the amount of $40,000.00, entered by the trial court pursuant to a jury verdict in an action wherein the appellee sought to recover attorney's fees on a contingent fee contract.
The appellant's jewelry store was robbed of approximately $350,000.00 worth of jewelry. Approximately $150,000.00 thereof was jewelry held on consignment by the appellant. The loss was partially covered by an insurance policy issued by Lloyds of London in the amount of $100,000.00. A private adjuster was employed to process the claim with Lloyds and to effect a settlement of the consignors' claims. A settlement was tentatively effected with the consignors, whereby they were to receive 60% of the face amount of the policy and the appellant was to receive 39%, there being a 1% deductible clause. However, Lloyds rejected the appellant's claim, contending the appellant's records and proofs of loss didn't comply with the provisions of the policy. As a result, the appellant hired the appellee on a 40% contingent fee contract to recover under the policy. The contract reads as follows:
"AUTHORITY TO REPRESENT
"I, the undersigned client, do hereby retain and employ
 MILTON KELNER, P.A.
 412 Biscayne Building
 19 West Flagler Street
 Miami, Florida 33130
as my attorney, to represent me in my claim against certain underwriters at Lloyd's, London, pursuant to Certificates #T8845A and #T8845B for the sum of One Hundred Thousand Dollars ($100,000.00) resulting from a theft and burglary that occurred on the 8/9th day of May, 1971.
"I agree to pay all costs of handling including court costs, accountant's fees, travel expenses, etc. As compensation for their services, I agree to pay my said attorneys from the proceeds of recovery the following fees:
40% of all sums recovered whether by way of settlement, Arbitration or lawsuit
50% if an appeal is taken from the lower court by either side, or if garnishment or any proceeding after judgment has to be brought to collect the *14 judgment or any portion thereof, or if suit is brought after an Arbitration award.
"It is understood and agreed that this employment is upon a contingent fee basis, and if no recovery is made, I will not be indebted to my said attorney for any sum whatsoever as attorney's fees.
"I hereby give my said attorney the exclusive right to take all legal steps to enforce my claim, and I agree not to settle this claim in any manner without the written consent of my attorney.
"DATED this 16 day of September, 1971.
 610 Lincoln Road, Inc. d/b/a
 A. Taylor & Sons
 By /s/ Abe Taylor 
 Abe Taylor, President
"The above employment is hereby accepted upon the terms stated herein.
 /s/ Milton Kelner 
 MILTON KELNER, P.A."
Thereafter, the appellee was also hired to defend against the consignors' suits. Suit was filed against Lloyd's which, before trial agreed to pay the face amount of the policy. Thereupon, the consignors agreed to accept $60,000.00 for their claims as assessed in their suits. Based thereon, the appellee tendered the settlement along with a final accounting to the appellant. The final accounting provided that the consignors receive $60,000.00 and that the appellee receive $39,000.00; the appellant was to receive nothing. The appellant rejected this and discharged the appellee. The appellee brought the instant suit for his contingent fee. The appellant contended that the contract meant to award the appellee a fee of 40% of the appellant's recovery, not 40% of the entire proceeds of the policy or, in the alternative, that the appellant should recover on a quantum meruit basis. The cause was tried and, at the conclusion, the trial court instructed the jury that the contract had been proved and the jury's job was to determine the amount of the fee.[1] The jury returned a verdict of $40,000.00, resulting in the final judgment appealed.
This appeal was duly prosecuted and, in urging error, the appellant has cited us to numerous authorities for the general proposition that where a controversy arises between an attorney and client the burden is on the attorney to demonstrate that he has taken no undue advantage of the client, such authorities being: Bolles v. O'Brien, 63 Fla. 342, 59 So. 133; Williams v. Bailey, 69 Fla. 225, 67 So. 877; Halstead v. Florence Citrus Growers' Association, 104 Fla. 21, 139 So. 132; Brass v. Reed, Fla. 1953, 64 So.2d 646; Crane v. Stulz, Fla.App. 1961, 136 So.2d 238; McCreary v. Joel, Fla. 1966, 186 So.2d 4; Nelson v. Walden, Fla.App. 1966, 186 So.2d 517; Thomas v. Fisher, 3 Fla. Supp. 70. These cases are not applicable to the case at bar, because the contracts involved in them were contracts which were entered into subsequent to the original attorney-client relationship; whereas the contract in the instant litigation is the initial agreement between the parties establishing the attorney-client relationship and this contract, as to its validity and fairness, is generally measured by the ordinary rules applicable to other contracts. Halstead v. Florence Citrus Growers Association, supra; Reid v. Johnson, Fla.App. 1958, 106 So.2d 624. Counsel for the appellant has also called our attention to the California case of Fracasse v. Brent, 6 Cal.3d 784, 100 Cal. Rptr. 385, 494 P.2d 9, wherein the California Supreme Court, in construing the amount of recovery by an attorney discharged without cause [who had a contingent *15 fee agreement], receded from all prior opinions and said that notwithstanding the contingent fee agreement the nature of the relationship of attorney and client permitted the client to discharge the attorney without cause at any time and that the attorney's recovery would be limited to a quantum meruit basis and the ultimate recovery could not be had until the happening of the contingency. This decision and authorities from other jurisdictions are amply analyzed in a law review article, found in 47 Albany Law Review, at page 364, which was also brought to our attention by the appellant.
Although Florida has recognized the right of a discharged attorney to recover the amount of his fee under a contingency fee agreement, based upon the percentage as provided in the contingency agreement [Osius v. Hastings, Fla.App. 1957, 97 So.2d 623, vacated on other grounds in Hastings v. Osius, Fla. 1958, 104 So.2d 21; Rosenkrantz v. Hall, Fla.App. 1964, 161 So.2d 673], it has not specifically ruled on the time that such fee is recoverable. [Of course, in the instant case, the contingent happening has occurred and we are not directly faced with this problem in this matter.] However, it does appear that we are squarely faced with the proposition of whether or not an attorney, discharged without cause by the client when he was to be compensated on a percentage rate upon the happening of a contingency, should be entitled to recover under the terms of the contract or be limited to a quantum meruit recovery. It appears that the older cases and the weight of authority probably support a recovery of the percentage fixed in the contract. Tonn v. Reuter, 6 Wis.2d 498, 95 N.W.2d 261; Knoll v. Klatt, 43 Wis.2d 265, 168 N.W.2d 555; Anno., 136 A.L.R. 231, 245 (III)(b), and cases cited therein. However, as indicated, California has departed from this general rule as has New York [Fracasse v. Brent, supra; Martin v. Camp, 219 N.Y. 170, 114 N.E. 46], and the more recent cases seem to indicate that the better rule to be followed, because of the peculiarity of attorney-client relationships, is that the client should have a right to discharge an attorney employed under a contingent fee agreement without cause and, upon the happening of such a discharge, the attorney would be limited to a quantum meruit recovery for his services performed to the date of discharge. Fracasse v. Brent, supra; Martin v. Camp, supra; Ramey v. Graves, 112 Wash. 88, 191 P. 801; Anno., 136 A.L.R. 231, 245.
This, of course, presents the next question: Is the attorney entitled to his quantum meruit recovery at the time of the discharge or at the time of the successful happening of the contingency to the benefit of the former client? Contingency fee agreements are primarily for the benefit of indigents or those not capable of employing capable counsel, and many times the attorney [as a participant to such an agreement] performs his services and because there is no recovery to the client the attorney goes uncompensated. Fracasse v. Brent, supra; Brown v. Connolly, 2 Cal. App.3d 867, 83 Cal. Rptr. 158; First Nat. Bank and Trust Co. of Tulsa v. Bassett, 183 Okla. 592, 83 P.2d 837. It appears that the better rule to be followed would be that, in addition to the attorney's fees being limited to a quantum meruit fee, no such recovery could be had until such time as the contingency provided for in the original agreement had occurred.[2]To hold otherwise would have a "chilling" effect on a client exercising his right to discharge an attorney, because he might be liable for fees to the discharged attorney even though he made no recovery on his original claim. Fracasse v. Brent, supra; Brown v. Connolly, supra; First Nat. Bank and Trust Co. of Tulsa v. Bassett, supra.
*16 Therefore, in accordance with the views above stated, the contingency having occurred in the instant case, the matter is returned to the trial court for an ascertainment of damages to be awarded to the plaintiff therein based upon a quantum meruit theory.
Reversed and remanded, with directions.
NOTES
[1] A portion of the instructions read as follows:

* * * * *
"An attorney employed for a specific purpose and for a definite fee who is discharged without cause after there has been substantial performance, is entitled to recover the fee agreed upon and I say not limited to the reasonable value of the services performed."
* * * * *
[2] Recognizing the impact of this opinion on attorney-client relationships as it relates to contingent fee agreements and the client's right to discharge an attorney under the circumstances, this case will be certified to the Supreme Court of Florida as a matter that "passes upon a question of great public interest".