**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

FEB 4 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HOWARD L. ABSELET, an individual and derivatively on behalf of ROOSEVELT LOFTS, INC.,

Plaintiff - Appellee,

v.

HUDSON LABOR SOLUTIONS, INC., a California corporation; et al.,

Defendants - Appellants.

No.    18-56027

D.C. No. 2:16-cv-06263-JFW-JEM

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted January 9, 2020
Pasadena, California

Before:  WATFORD, BENNETT, and LEE, Circuit Judges.

Hudson Labor Solutions, Inc. and its owners, brothers Raymond and Rodney Yashouafar ("Raymond Y." and "Rodney Y."), appeal the district court's grant of summary judgment in favor of Howard Abselet on his claim for intentional interference with contractual relations.  We have jurisdiction under 28 U.S.C.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

§ 1291, and we review the district court's ruling *de novo*. *See Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We reverse and remand.

In 2008, Abselet loaned six million dollars from a medical malpractice settlement to a group that included Solyman Yashouafar and Massoud Yashouafar (together, the "Judgment Debtors"), who are the father and uncle, respectively, of Raymond Y. and Rodney Y. When the Judgment Debtors defaulted on the loan, Abselet sued for recovery of his principal. The February 10, 2012 settlement of that lawsuit is the contract at issue here. The Judgment Debtors agreed to repay Abselet by, among other things, conveying their interest in up to $1.125 million from a bankruptcy class action reserve.

Abselet subsequently executed writs of attachment against the Judgment Debtors and undertook various efforts to recover the amounts owed. Unfortunately, these efforts have been repeatedly frustrated by fraudulent conveyances of assets from the Judgment Debtors to family members.

The intentional interference claim here involves a transaction that Abselet alleges was fraudulently made to circumvent the $1.125 million owed from the class action reserve under the settlement agreement. In March 2012, the Judgment Debtors authorized a $300,000 payment to Hudson — an apparent shell company owned by Raymond Y. and Rodney Y. — from the class action reserve. Over the next two years, Hudson paid $267,000 in "wages" to the Judgment Debtors and their

2

spouses, which appears to be an improper pass-through of most of the $300,000 payment.

1.     Despite strong evidence of egregious misconduct by the appellants and the Judgment Debtors, we are unable to affirm the district court's summary judgment ruling because, viewing the record in a light most favorable to the appellants, there is a genuine issue of material fact as to whether Abselet's intentional interference claim was timely filed. *See Bravo*, 665 F.3d at 1083. An intentional interference claim typically accrues for statute of limitations purposes "at the date of the wrongful act," or no later "than the actual breach of the contract." *See Trembath v. Digardi*, 118 Cal. Rptr. 124, 125 (Cal. Ct. App. 1974). Here, the allegedly induced breach occurred on or about March 20, 2012, while this action was not filed until August 22, 2016 — after either the two or three-year limitations period that applies to intentional interference claims. *See id.* (normal limitations period is two years); *Romano v. Wilbur Ellis & Co.*, 186 P.2d 1012, 1015 (Cal. Ct. App. 1947) (three-year limitations period where fraudulent inducement is alleged).

The delayed discovery rule can extend a statute of limitations, such that it "begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005). The district court

relied on this rule to find that the earliest Abselet could have discovered the factual predicate for his claim was during the August 27, 2015 deposition of Raymond Y. in a different case. But on March 29, 2013, Abselet's attorney sent a demand letter that accused the $300,000 payment to Hudson of being an improper distribution to the Judgment Debtors "through a variety of entities and third-party obligors." Because we must accord all inferences in the appellants' favor at this stage, we conclude that the letter raises a genuine issue of material fact as to whether, under the delayed discovery rule, the March 29, 2013 letter triggered the statute of limitations for the intentional interference claim.

Abselet alternatively argues that the district court's ruling should be affirmed on the basis of equitable tolling. A statute of limitations may be tolled "when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 194 P.3d 1026, 1031 (Cal. 2008). Three elements are required: (i) timely notice; (ii) lack of prejudice to the defendant; and (iii) reasonable and good faith conduct by the plaintiff. *See id*. at 1033.

While Abselet identifies two events that he contends tolled the statute of limitations, genuine issues of material fact exist as to whether either event provided the appellants with timely notice of a potential intentional interference claim. First, Abselet filed a July 9, 2013 bankruptcy motion challenging certain distributions

4

from the class action reserve. The motion, however, did not discuss the $300,000 payment to Hudson, but instead identified seven other distributions it deemed improper. And second, Raymond Y. filed a third-party motion in a different action related to the transfer of stock in two companies. But neither the third-party motion nor the action in which it was brought had any connection to the $300,000 payment. Accordingly, there remain genuine disputes of material fact, and so we are unable to hold that Abselet is entitled to equitable tolling as a matter of law.

2. Intentional interference with contractual relations requires: (i) a valid contract; (ii) defendant's knowledge of the contract; (iii) intentional acts designed to induce a breach of the contract; (iv) actual breach; and (v) damages. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589-90 (Cal. 1990). The record reflects genuine issues of material fact as to whether the settlement agreement had taken effect when Hudson received the $300,000 payment, whether the appellants knew about the settlement agreement at that time, and whether the appellants induced a breach of the settlement agreement. The district court therefore also erred in granting summary judgment with respect to these elements of the intentional interference claim.

**REVERSED AND REMANDED.**